The next case this morning is 24-5035 Bond v. Sheriff of Ottawa County. Counsel for Appellant, if you would make your appearance and proceed, please. May it please the Court. Good morning, Your Honors. My name is Allison Levine. I'm representing the Appellant, the Sheriff of Ottawa County, Oklahoma, in his official capacity. This appeal arises from a jury verdict in the Northern District of Oklahoma. The case concerns a Section 1983 claim for deliberate indifference to the medical needs of pretrial detainee Terrell Ellis. The claim was an official capacity municipal liability claim. The Sheriff, in his official capacity, was the only defendant. There are numerous grounds for appeal, as explained in our extensive briefing, but the predominant overarching issue, which I'll focus on today, is that the compensatory damages verdict of $33 million can only be characterized as excessive, impermissibly punitive, and shocking to the conscience. The verdict certainly raises the inference that it was the result of passion, prejudice, and improper causes invading the trial. Without that occurring, the weight of the evidence does not support a $33 million compensatory damages verdict. And the trial court's determination otherwise was an abuse of discretion. A remediator or a new trial should have been ordered. I'd like to start with the excessiveness of the verdict. Again, this was a non-economic compensatory damages verdict. When a jury has given an excessive damages verdict, when the verdict seems to be too far out of line, an appellate court can reverse the lower court's denial of a motion for new trial. One way to measure excessiveness is a comparison to jury awards in other similar cases. What's the legal framework that you're using for the argument you're making now? I am citing to Gasparini v. Center for Humanities, a 1996 U.S. Supreme Court case. And also for the comparison to jury awards in other similar cases, that's Wolfe v. City of Wichita, 10th Circuit, 1989, as well as Evans v. Fogarty. And that was 10th Circuit, 2007. In our Burke case, didn't we not say that we discourage comparisons to awards from other cases as part of the remediator analysis? That was mentioned in the Burke case, that it was discouraged, but not that it was prohibited. And I'm not asserting that it is prohibited, but the point is, presumably, that should qualify your argument, then. Because it is not just because there are other verdicts that are lower doesn't mean that this one is an abuse. The court abused its discretion to accept this one, right? That is correct. And that is not my argument that that is the sole measure of excessiveness. But that is certainly a measure of excessiveness. At the cases that you cited, don't they typically come to a conclusion and then look at the other cases as sort of support for the conclusion they've already reached? Yes, that's correct. One of the cases that I cited, too, Young v. Correctional Health Care, which I think we're very much in a unique position there, because the Young case was tried in the Northern District of Oklahoma on a deliberate indifference to medical care claim in a correctional facility setting just a few months before the present case was trialed. And, of course, the judge in that case, when ruling on the post-trial motions for remediator and new trial, cited to Burke and came to the conclusion and then looked back to Burke to support it. And that's really where I'm looking to urge this court to look at comparable verdicts. As I said, in Young, there was a $14 million compensatory damages verdict for a deliberate indifference case. And that court looked back to Burke, where there was a $10 million compensatory damages verdict. And the reasoning the court went through in Burke, they, of course, determined that the $10 million verdict was not excessive. And essentially, the court stated that it was large, but it was on par with cases involving similar conduct and was not excessive when the plaintiff had endured considerable pain and suffering during five days at the jail. They essentially used a per day calculation, working out to $2 million of compensatory damages per day that the plaintiff was in the jail. Was the amount of the verdict here less than what was requested by the estate? Yes, it was. How should we be thinking about that? A plaintiff can request any amount of damages that they'd like to request, especially when it is a non-economic situation where we're not looking at medical bills or things like that to give us something to ground it. It's simply based on pain and suffering. They could ask for $100 million. They could ask for $500 million. And it was less than the, I believe, approximately $50 million that the plaintiff had requested. But given the facts of the case, it was still grossly excessive. And we're dealing just with compensatory damages. Yes. Yes, Your Honor. How should we view the fact that the district court denied or overruled the objection to a discussion of deterrence during the closing argument? That is the biggest issue with this case. Deterrence arguments, of course, in the Tenth Circuit are not permitted in cases where punitive damages are not at issue. And certainly punitive damages were not at issue here. In Burke, didn't the decision assume without deciding that it was improper? In Burke, yes, it did. But I'm referring to case law from, I may pronounce this incorrectly, Racher or Ratcher from the Tenth Circuit, where it held that it certainly can be prejudicial to raise arguments of deterrence when punitive damages are not available. It can be prejudicial, but is that the same as saying it is barred, deterrence conversations? I think it is all about context. It is, which means that it doesn't mean that necessarily discussion of deterrence in this case would be prohibited, right? It doesn't mean necessarily, but the context in this case shows that it is. And I believe the district court, in its order denying the motion for remitted and motion for a new trial, stated, dismissed defendant's argument that the argument for deterrence in the closing argument was improper. She stated that defense counsel had mentioned in his closing argument that the jury cannot punish, cannot use the, which is a true statement of law, that the jury cannot issue punitive damages. And the district court said, well, plaintiff's counsel came back and it was fine to say that because it was a rebuttal to defense counsel's argument that punitive damages are not allowed. And to me, the context is very clear, that if you're using the argument to refute defense counsel's statement that punitive damages are not allowed, you're stating that, oh, yes, they are. Punitive damages are allowed. We're just calling them deterrence damages. Not necessarily. I mean, why wouldn't it be the case that if the defendant says punitive damages are not allowed and the plaintiff says, but, you know, they may not, I don't think they said this, but you can do this. You may not be able to do that, but you can do this. And as the district court described it, it was a question of internalizing costs. And that was very consistent with the argument that the plaintiff was making, that, you know, they were trying to operate a jail on the chief and that if you allow them to continue to operate a jail on the chief like this, they're going to declare victory because you let them go about doing this. So it was a situation of internalizing costs, was it not? I mean, that was so I guess I have two questions there. Why couldn't a retort to the statement that you can't punish doesn't necessarily have to mean, yes, you can punish. You can have a different rebuttal, can you not? I believe that you could, but I don't believe that's what happened in this case. The district court dismissed this as an off-the-cuff rebuttal. This was absolutely scripted. This was the almost identical to the argument that plaintiff's counsel made in the Young case, which, but of course in Young, punitive damages were available. What the jury heard, one of the last things that the jury heard before they went to deliberate, was that the very point of a 1983 lawsuit is deterrence to keep this from happening again. The jury was told that they were the group of people who could prevent this from happening in the future. And this was also tied in to an argument not just of what the facts related to Mr. Ellis and his detention and any pain and suffering that he endured and any indifference that might have occurred. This was made in conjunction with a statement that county employees, the sheriff, has the attitude that inmate lives don't matter. Let me, if we were to agree with you that the discussion of deterrence was inappropriate and that it was not insignificant in the closing, didn't the district court, who was in the best position to observe the jury over the course of the trial and hear the evidence of the pain and suffering, wasn't she in the best position to determine whether that we'll presume error in that closing argument affected the size of the verdict? Well, she certainly was present to hear the evidence, to hear the arguments. However, it was clear from her order that she wasn't relying on 10th Circuit precedent regarding deterrence. She was relying on orders from the 2nd Circuit and from the 9th Circuit. And this issue had been raised well before trial in a motion in Lemonnet by defense counsel and an ongoing objection was lodged by defense counsel related to this issue. And are arguments about deterrence per se prohibited? In a case where, such as this one, where punitive damages are not available, yes, I believe they are. But deterrence is an acknowledged goal of 1983 cases, right? It's a statute, isn't it? Yes, it is. It is. It can't be off limits. I think your argument doesn't say otherwise. It has to be in context. Yes, as I mentioned before, it does have to be in context. And when you look at the context of what occurred here and what else was said here, it's very clear that the plaintiff's counsel was arguing for deterrence in terms of punishment. And why is it that the instruction that the court gave, why is that not curative of any problem that may have? The court did not issue any curative remarks at the time. The court relied on a very general instruction and stated that it's presumed that juries will follow the general instruction, that they will follow the law. Well, there was also an instruction on compensatory damages as being the only thing available, right? Right, correct. Did you object to the instruction as being insufficiently clear in terms of what it was telling the jury about how they should think about deterrence or not? No, there was no objection to that jury instruction. And as a follow-up, and I should have looked at this, but in your submitted instructions, did you request an instruction that said punitive damages are off limits? Yes. And did you object to not getting that? Did you get that in the principal instructions, in the instructions the court gave? I do not have the answer to that right now because we didn't challenge that aspect of the jury instructions. But as I said, we raised that in the motions in Lemonnier to start with and raised the ongoing objection. Well, okay. But to clarify, I mean, if the point is whether one can be comfortable that the jury did not rely on punitive motivation in light of the argument of defense counsel, then looking at the, if the court gave an instruction beyond the instruction that said you could only give punitive, I mean compensatory damages, if the court, in fact, gave an instruction that said you can't consider punitive motivation, then that matters, doesn't it? It does. We're required to believe that the jury followed the instructions that they were given. But again, as I said, in the context, I think the context overrides the general instruction and the general presumption that the jury followed and understood the distinction between deterrence and punitive damages. And I'm not sure that that was ever made clear. And I know that plaintiff's counsel, in responding to these arguments, had focused on the fact that he never used the word punitive, never used the word punishment, only used the word deterrence. But I don't believe there was ever any adequate explanation of the difference between the two. And, Your Honor, I see that I'm over time. Thank you, counsel. Thank you. Good morning. Bob Blakemore for the plaintiff. This case is a truly tragic case, uniquely disturbing. As the district court correctly found, there was overwhelming evidence. And she found that that evidence supported the verdict in this case. During his time in the Ottawa County Jail, Mr. Ellis encountered unspeakable mistreatment and nightmarish conditions of confinement tantamount to torture. Mr. Ellis's suffering and death were entirely preventable. The jail staff's reckless and at times depraved indifference to his serious medical needs is shocking, shameful, and indefensible. And, in fact, defense counsel largely agrees. During Mr. Poe's closing argument in this case, he says, and this is Appellant Appendix 1895, this case is an emotional one, not just the death, but especially when you factor in the verbal comments, the ridicule by the staff. And that's not even mentioning Teresa Horn. But no matter how much you hate Teresa Horn, no matter how much you hate Charles Shoemaker, Johnny Bray, Cardis Lawson, all of those who could have done something, but for some reason didn't, you cannot award damages that would punish the county. Well, that's correct, isn't it? It is correct. So tell me, on the closing argument for the plaintiff after an objection about discussing punishment, there's an argument that is relatively robust about deterrence. And I think we have certainly strongly hinted that deterrence is not a proper consideration in terms of compensatory damages. Compensatory damages are pain and suffering, loss of consortium. You could have had loss of income, but you didn't put on any evidence of that. Why shouldn't I be concerned about the impact of that deterrence argument to the jury here? Your Honor, I think when you look at, and it's actually quoted twice in the court's order, but when you look at Mr. Smullin's argument, when he's talking about, for instance, when he's asking for the, saying he believes that the case is worth $50 million, he says, for Terry Ellis' pain and suffering. There's a discussion about deterrence, and I think when you look at the argument as a whole, what he's saying is that don't devalue this man's life, don't devalue his suffering. That's not what he says. He says you've got, you're the last line here, and you've got to send a message to these people so they don't go out and high-five at a low verdict and go out and do the same thing and have other people suffer. That is a statement that was made, and again, in the context of discussing the compensatory damages. And that that would have the effect, if you award the damages that were truly incurred by this man, that would have a deterrent effect. And that's a correct statement of law. That's a very fine distinction. But it's a correct statement of law. I don't think it is. Just because Congress said when they're adopting 1983 that we're doing it for a lot of reasons, including deterrence, doesn't mean that when they said in some instances you can get punitives, and in other instances you can only get compensatory, that they intended to have the compensatory definition expanded like it isn't in any other context to include deterrence. I just, I don't see that. Well, Your Honor, again, I believe that when you look at the argument as a whole, that it didn't cross the line. Well, if I think it did cross the line, what do I do? Do I say I think that the $33 million verdict should be reduced by X number of dollars? Or do you remand to the district court who sat there and listened to all the evidence to make that determination? Well, I think if you think that it was improper, then the step is to look at the factors under Wittenberg and Osterhout, which includes the strength of the evidence, importantly. Well, that it would be the strength of the evidence on compensatory damages, not the strength of the evidence on compensatory damages. Well, I think it's the strength of the evidence overall as to liability and the damages. You would look at both, and also whether the comments were pervasive and whether there was adequate curative action. Well, the only curative action is you have a general compensatory damages instruction, and then you have the jury told that are you going to do that? And then the argument of counsel is an evidence. Is there some other curative instruction I'm missing? No. And for instance, in the Burke case, the court found that that was sufficient. And it's particularly in a case like this where there's overwhelming evidence, those kinds of general, more general curative actions are sufficient. So you're in a position that the weight of the evidence in Osterhout is about the evidence presented to the jury in the case, right? Not just on how you prove a compensatory damage. Correct. Well, isn't that then punishment? Because if the evidence of liability is incredibly strong, for example, you have a video of the nurse engaging in offensive conduct that the jury gets to see, that they get to up the compensatory damages because of that. Because that doesn't sound like compensatory damages to me. Well, her conduct certainly goes to the damages because of what Terry Ellis was experiencing. It certainly goes to his pain and suffering, the level of deliberate indifference. Yes. Right. So the jury can look at that and imagine his frustration and his pain and his fear as he's there. And that is a measure, a proper measure of compensatory damages. But deterrence, I have a real problem with as a measure of compensatory damages. Again, I believe when you look at the statements as a whole, that, for instance, as he's discussing in the closing, as Mr. Smolin is discussing the issue of deterrence, he goes on to say, I think when you really sit down and you look at the jury instructions on compensatory damage and you think about what he was suffering, what his suffering was like, both from a physical standpoint and from a mental standpoint, and the idea that even in those moments of suffering, he just wants to know what's going on with his kid. And if he stopped there, we'd be perfectly fine. But he didn't. No, but what, again, as the court correctly held, and I think it's supported, is that what the overall argument is, is about the county internalizing the cost of their misconduct by fully compensating the estate. Do you have any other questions? I do want to just sort of recap in part and put a fine point on your response to Judge McHugh's question about if we were to find that this is improper, this line of argument. Because it goes towards the question, obviously, of whether the court, whether the amount that was awarded should be deemed to be inappropriate. If we were to find that this line of argument was improper, then we would go through this process. Wittenberg, I think, is the case where we would look at how pervasive were these comments, and presumably they weren't that pervasive. I think it was, how many times, it was just a few times he referred to deterrence, right? Correct. Okay, so whether they were pervasive, questions about the amount of evidence that was in the case, and whether there was a curative instruction, and decide what the impact of that line of argument would be, right? Correct. And we're on abuse of discretion review? Yes, it's abuse of discretion, and the standard is whether it clearly appears that the challenged remarks influenced the verdict. And we make that decision by looking at the four factors in Osterhout, right? Yes, Your Honor. So we could conclude that this was inappropriate, but perhaps not pervasive, and so on. And I don't believe it was pervasive, and I believe that the court, but yes, you can certainly find, under that analysis, that even if the conduct and the statements were inappropriate, based on that balancing test and those four factors, that the verdict should not be overturned. Well, we would have to say that based on those four factors, the district court didn't abuse its discretion. Correct. So it's even sort of more generous. Right, and of course you know that standard is whether it was arbitrary or clearly unreasonable. Or contrary to law. Or contrary to law. I can go back and look at the record, but you may know off the top of your head. Was there an instruction, an instruction of the court that counseled the jury that it should not punish the defendant beyond the general instruction that says that you award for compensatory damages only? I mean, was there a specific instruction that said that punishment was off limits? No, there wasn't an actual jury instruction. Obviously, Mr. Poe, in his closing, made that a focus of his closing argument. Yeah, but one of the court's instructions is that arguments of counsel aren't evidence and that sort of thing. But in terms of when she gave the law, when the district court gave the law, that was not one of the instructions. No, there was not a specific instruction on punitive damages or punishment. Are you aware of any case in our circuit that holds that it is contrary to law to use the word deterrence in a closing? No, I don't believe there is one. The only circuit court that I'm aware of that actually squarely addresses the issue is the Chalmers decision. It's a 1985 decision that we cite in our brief from the Ninth Circuit. Were punitive damages also at issue in Chalmers? I don't believe so. But I know that what the court said in that case is that when discussing, and it was about a discussion of compensatory, that discussion of deterrence during an argument is not necessarily improper as long as it doesn't cross the line into punishment. And, again, we believe that under that standard that the argument was appropriate and consistent with law. Anything else? No. Thank you. Case is submitted. Thank you. Thank you, counsel.